In the Matter of CHESTER F. X. BERGER, as President of Radio Guild, Local 50, United Office and Professional Workers of America, C.I.O., Petitioner. WORLD BROADCASTING SYSTEM, INC., Respondent.

Supreme Court, Special Term, New York County, March 12, 1948.

*Samuel M. Sacher* for petitioner.

*Harry Cohen* and *Jonathan B. Bingham* for respondent.

HOFSTADTER, J. The petitioner, a labor union, moves to compel the employer to arbitrate a dispute claimed to be arbitrable under the collective bargaining agreement passed on in *Matter of Berger (World Broadcasting System, Inc.)* (191 Misc. 1043, decided simultaneously herewith). Since the opinion there sets out the arbitration clause at length, it is unnecessary to repeat it in this opinion. Concededly, the employer and the union entered into a collective agreement on January 6, 1947. Section XXI of the agreement provides:

" XXI. DURATION:

" A. This agreement and all of its terms, conditions and provisions shall become effective as of January 6, 1947 and remain in full force and effect for a period of two (2) years terminating on January 5, 1949.

" B. Either party, by giving thirty (30) days' prior written notice to the other party, may reopen this contract once, on January 6, 1948, for the sole purpose of adjusting salary rates upward or downward. Said notice shall set forth the adjustments desired and the basis therefor."

The petitioning union gave the employer notice, pursuant to this article, of its desire to reopen the contract for the purpose of adjusting salary rates upward. Negotiations between the parties not having resulted in agreement, the union requested arbitration.

The question for decision is whether the dispute arising from the inability of the parties to agree is of such nature as to be arbitrable under the arbitration clause.

In support of its contention that this dispute is not arbitrable, the employer urges that the grievance machinery prescribed in the collective agreement, and which must precede any resort to arbitration, is inappropriate to the treatment of the wage dispute. The following is the grievance machinery section:

" XV. GRIEVANCE MACHINERY:

" The following shall be the procedure for the adjustment of any disputes, differences or grievances between the Union and World:

"(a) The Union shall designate a grievance committee of three members who in turn shall empower its chairman to act in its behalf on any and all disputes that may arise.

"(b) When a grievance arises the matter shall be submitted in writing, within forty-eight (48) hours after the occurrence complained of, to the head of the department involved or to a duly authorized representative of World. The matter shall be taken up in the first instance by the Employee affected and the head of his department.

"(c) In the event the grievance cannot be satisfactorily adjusted with the department head in seven (7) days, then the chairman of the grievance committee shall meet with a representative of World and take up the grievance. A representative of the Union may also be present.

"(d) In the event the grievance is not satisfactorily adjusted under paragraph " c " within seven days, the same may then be submitted to arbitration.

"(e) Any agreement reached pursuant to the foregoing grievance procedure shall be final and binding."

The court is required to determine whether, under a fair and reasonable interpretation of the agreement, the parties intended that a dispute arising from their inability to agree on a revised salary schedule was to be arbitrated. The agreement, while full and carefully drawn, is, nevertheless, not sufficiently explicit to permit of a ready answer based solely on its language. The parties obviously entered into the agreement to establish peaceful industrial relations for a period of two years. This purpose could not be fully effectuated if, on the inability of the parties to agree in the event of a reopening of the salary schedule, the resultant dispute were not arbitrable. The parties might in such case find themselves with a one-year, instead of a two-year, agreement.

The foregoing consideration is, however, not necessarily determinative of the issue. If from its very nature the dispute was not one which the parties by the agreement provided should be arbitrated, then the denial of arbitration merely gives effect to the expressed intention of the parties, though the result be a disturbance of the relations between them. The respondent insists that if the arbitrator possesses the power to pass on the revision of salaries, he has power to impose a new agreement on the parties and that the parties never intended to vest an arbitrator with this power. In support of its position, the respondent relies heavily on *Matter of Int. Assn. of Machinists* (*Cutler-Hammer, Inc.*) (271 App. Div. 917, affd. 297 N. Y. 519).

In the *Cutler-Hammer* case (*supra*) the collective agreement provided that the employer would meet with the union " to discuss payment of a bonus ". The collective agreement provided for arbitration of disputes as to the " meaning, performance, non-performance or application " of its provisions. The parties discussed the bonus but were unable to come to an agreement. The union moved for arbitration and the court held that the dispute was not arbitrable. The court took the view that the agreement required the employer to discuss the bonus question, but not to pay a bonus in any event the amount of which was subject to negotiation. In its opinion the Appellate Division said (p. 918): " All the bonus provision meant was that the parties would discuss payment of a bonus. It did not mean that they had to agree on a bonus or that failing to agree an arbitrator would agree for them. Nor did it mean that a bonus must be paid and only the amount was open for discussion. So clear is this and so untenable any other inter-

pretation that we are obliged to hold that there is no dispute as to meaning of the bonus provision and no contract to arbitrate the issue tendered.''

While neither the language nor the dispute in the *Cutler-Hammer* case (*supra*) can be said to be identical with those before the court on this application, nevertheless there is little difference in principle between an agreement to discuss whether a bonus should be paid and one to reopen a contract for the purpose of adjusting salary rates upward or downward. In each case there is a provision for free negotiation, unfettered by an obligation to reach an agreement and without the setting up of any standard by which a court or arbitrator is to be governed on the failure of the parties themselves to agree.

Parties to a collective bargaining agreement can, of course, place in the hands of an arbitrator the power to revise the wage schedule and thus to impose on them a new agreement. The grant of this power is, however, not to be lightly implied.

A case in which the contract provision was perhaps closer to that now before the court than the one in the *Cutler-Hammer* case (*supra*) is *Vasek* v. *Matthews & Co.* (79 N. Y. S. 2d 5). There the contract provided, '' The contract may be opened to consider general wage increases.'' The court held that this provision did not oblige the parties to agree on wage increases and, failing to agree, to permit an arbitrator to agree for them.

It must be recognized, too, that the grievance machinery provided for in the agreement does not lend itself to the disposition of a dispute arising out of inability to agree on a general salary increase or decrease. If the agreement indicated clearly that the parties intended the reopening of the contract to be the subject of arbitration, the grievance machinery provision might be regarded as not necessarily excluding the arbitration of the wage dispute. Since, however, the agreement does not evidence the purpose to confer on an arbitrator the power to impose an agreement on the parties on their inability to agree on a new salary schedule, the grievance machinery provision may be treated as at least consistent with the view that the parties neither intended nor contemplated arbitration of a dispute incident to the reopening of the entire matter of the scale of salaries.

The court, therefore, concludes that the arbitration clause is not sufficiently comprehensive to make the dispute over a new scale of salaries incident to the reopening provision arbitrable. The motion to compel arbitration is, accordingly, denied.