OPINION OF THE COURT
Carol H. Arber, J.
When Thomas Wolfe wrote You Can’t Go Home Again it is clear he had no reference to Mr. Musso, the plaintiff in this case. On the other hand, given what happened to Mr. Musso, he undoubtedly felt the sentiments of Wolfe’s title during the events.
*576 Mr. Musso’s travels began with his decision to purchase charter airline tickets from Tourlite Inc. to pay a visit to Italy, from whence he came. He bought round-trip tickets for himself and his wife and they flew to Rome with no incident.
Mr. Musso was aware of the rules of the charter which required a confirmation of the return flight at least 72 hours prior to departure (which he complied with and there is no dispute as to the fact that this was done). He was also required to arrive at the airport three hours in advance of the flight.
Mr. Musso testified that he and his wife arrived at the airport for their return flight on August 3, 1985 at 10:00 a.m. The flight was scheduled to depart at 1:00 p.m., but when he inquired at the information counter, Mr. Musso was informed that the flight was delayed until 3:00 p.m. The person at the booth instructed him to get on line át about 1:30 p.m. Mr. Musso remained in the airport and joined the line at 1:30 p.m. as he had been instructed. There was only one line for charter flights. The line was long, and Mr. Musso attempted to find someone to talk to as he waited. When he finally arrived at the front he was told by the person behind the counter that while they had his reconfirmed reservation the plane was full and that it was ready to leave, and that he would therefore not be able to board it. Later, he was told by a representative of the charter company (Tourlite) that he might be able to catch the following week’s charter. Upon hearing that Mr. Musso, who from his description remained calm in the face of being told that he had no flight home, decided that he would make other arrangements. He rented a car, drove into Rome, where he checked into a hotel overnight, and bought two Alitalia tickets to New York for the following day.
Once he returned to New York, Mr. Musso sued Tourlite, the charter company, in Small Claims Court for the cost of the airline tickets. Tourlite, in turn, impleaded Tower Air, the airline with which it contracts to carry passengers. Tower Air moved to dismiss the third-party action on the ground that the contract between Tower Air and Tourlite requires that all claims be submitted to arbitration. Tourlite moved to dismiss on the ground that Mr. Musso had failed to prove his case.
The rights of an airline passenger are provided for in Civil Aeronautics Board regulations, which establish the obligations of airlines. (Levy v Eastern Airlines, 113 Misc 2d 847 [Civ Ct, Queens County 1982].) While the flight here was not on a scheduled airline, and was booked through the charter com *577 pany, it is clear that the purchase of airline tickets creates a contract between the purchaser and the provider of service (Goranson v Trans World Airlines, 121 Misc 2d 68 [City Ct, Westchester County 1983]). Tourlite agreed to bring Mr. Musso and his wife to Italy and back providing they complied with certain conditions. As the facts indicate Mr. Musso fulfilled his end of the bargain — he reconfirmed, he appeared promptly for departure, but was told there was no room for him on the plane.
Tourlite, in its defense, offered the testimony of the Director of Customer Service, Hans Elsevier. Mr. Elsevier, who was not present in Rome at the time these events occurred, testified that on the day in question, the flight manifest indicated 27 vacant seats. He stated that while Tourlite had a representative present, the seating for the plane is done by a "handling agent”. The manifest also indicated that the Mussos were confirmed on the flight in question. He said that a representative of Tourlite was stationed in front of the counter to assist passengers with difficulties. However, Mr. Musso testified that he had not encountered any such person although he had looked for someone. Mr. Elsevier admitted that he had no idea why Mr. Musso had not been permitted to board the plane.
In addition to the testimony, counsel for Tourlite argued that Tourlite was not the responsible party and that Tower Air was.
None of the arguments advanced by defendant Tourlite relieves it of its contractual responsibility to the plaintiff here. The testimony indicated Mr. Musso complied with his part of the contract by reconfirming. He appeared at the airport and waited on line. Since Mr. Elsevier was not present at the time of these events it is difficult to accept his hearsay testimony that a representative of Tourlite was there and was assisting those on the line.
Mr. Musso is therefore entitled to recover from Tourlite the cost of his Alitalia airline tickets ($1,100) and the additional cost for the rental car ($55) that he needed to go back into Rome to spend the night, together with interest from August 1985. The third-party action is dismissed since the contract between Tourlite and Tower Air provides that Tower Air is responsible only for things that occur on the airplane, and there is therefore no arbitrable controversy. (Matter of Perrin v Stempinski Realty Corp., 15 AD2d 91 [1st Dept 1961].)